MARITIME LAW HAWAII, LLC
Andrew N. Porter, Esq.   9792-0
P.O. Box 1873
Honolulu, HI 96805
(808) 379-0536
E-Mail: Andrew@Maritimelawhawaii.com

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANELA KAI CATAMARANS, INC; ISLANDS BEACH ACTIVITIES, INC; TRADEWIND CHARTERS, INC; SKD20, LLC; DKS20, LLC; SKYWATER CAPITAL, LLC; HAWAII OCEAN ADVENTURES R US, LLC; PARADISE WATERSPORTS, LLC; ROBERT GONZALES; MILAN POPODIC; STEVEN HALL, | Civil No. 22-00084 |
|         Plaintiffs, | **COMPLAINT** |
|   v. | |
| THE HOWARD HUGHES CORPORATION; WARD MANAGEMENT DEVELOPMENT COMPANY, LLC; VICTORIA WARD, LIMITED; DOE DEFENDANTS 1-20; DOE CORPORATIONS 1-20; DOE PARTNERSHIPS 1-20; DOE GOVERNMENT AGENCIES 1-20, | |
|         Defendants. | |

## COMPLAINT

COMES NOW, Plaintiffs ANELA KAI CATAMARANS, INC; ISLANDS

BEACH ACTIVITIES, INC; TRADEWIND CHARTERS, INC; SKD20, LLC;

DKS20, LLC; SKYWATER CAPITAL, LLC; HAWAII OCEAN ADVENTURES

R US, LLC; PARADISE WATERSPORTS, LLC; ROBERT GONZALES;

MILAN POPODIC; and STEVEN HALL, (hereinafter jointly referred to as

"Plaintiffs") through their attorney, Andrew N. Porter, for a Complaint against the

above-named Defendants, THE HOWARD HUGHES CORPORATION; WARD

MANAGEMENT DEVELOPMENT COMPANY, LLC; VICTORIA WARD,

LIMITED; DOE DEFENDANTS 1-20; DOE CORPORATIONS 1-20; DOE

PARTNERSHIPS 1-20; and DOE GOVERNMENT AGENCIES 1-20 (hereinafter

jointly referred to as "Defendants"), and allege as follows:

## JURISDICTION AND VENUE

1. This is an action for injunctive relief and damages for private nuisance,

   public nuisance, negligence, negligence per se, trespass to property, and

   trespass to chattels, and permanent injunction within this Court's diversity

   of citizenship jurisdiction pursuant to 28 United States Code sections 1332

   and 1367(a) as no Plaintiff shares a residency, citizenship, or principal

   place of business with any Defendant and the amount in controversy

   exceeds $75,000.00 USD.

2. Jurisdiction is proper in this Court because this is an action brought pursuant to the citizens' suit provisions of the Clean Air Act at 42 U.S.C. 7604.

3. Venue is proper in this Court because all causes of action action arise out of construction occurring on lands owned and/or operated by Defendants in the City and County of Honolulu, State of Hawaii, and the property damage and environmental violations and damage alleged herein occurred in the City and County of Honolulu, State of Hawaii.

## THE PARTIES

4. Plaintiff ANELA KAI CATAMARANS, INC. is a domestic corporation that, at all times relevant hereto, was incorporated and had its principal place of business in the State of Hawaii. Anela Kai Catamarans, Inc. is the registered owner of the vessel NAHOKU II, Official Number (O.N.) 996153, a 45 foot commercial sailing vessel located in Kewalo Basin Harbor ("Kewalo"). Anela Kai Catamarans, Inc. also operates two vehicles: a 2013 Nissan NV 2500 SV commercial passenger van, vin#: 1N6BF0KX4DN106331, and a 2017 Toyota Tacoma TRD, vin # 3TMCZ5AN5HM109654, which have parking spots in Kewalo.

5. Plaintiff ISLANDS BEACH ACTIVITIES, INC. is a domestic corporation that, at all times relevant hereto, was incorporated and had its principal

place of business in the State of Hawaii. Islands Beach Activities, Inc. is the registered owner of the vessel MANU KAI, Official Number (O.N.) 907938, a 43 foot commercial sailing vessel located in Kewalo.

6. Plaintiff TRADEWIND CHARTERS, INC. is a domestic corporation that, at all times relevant hereto, was incorporated and had its principal place of business in the State of Hawaii. Tradewind Charters, Inc. is the registered owner of the 50 foot commercial motor vessel ALOHA KAI, O.N. 1280222, and the commercial sailing vessels, SEASCAPE, O.N. 1299736, and MY SUNSHINE, O.N. 1166337, all having their primary mooring in Kewalo.

7. Plaintiff SKD20, LLC. is a domestic limited liability company that, at all times relevant hereto, was incorporated and had its principal place of business in the State of Hawaii. SKD20, LLC. is the registered owner of the vessel SASHIMI II, O.N. 526867, a 59.1 foot commercial motor vessel with its primary mooring in Kewalo.

8. Plaintiff DKS20, LLC. is a domestic limited liability company that, at all times relevant hereto, was incorporated and had its principal place of business in the State of Hawaii. DKS20, LLC. is the registered owner of the vessel IWA KAI, O.N. 526867, a 70 foot commercial motor vessel with its primary mooring in Kewalo.

9.  Plaintiff SKYWATER CAPITAL, LLC. is a domestic limited liability company that, at all times relevant hereto, was incorporated and had its principal place of business in the State of Hawaii. Skywater Capital, LLC. is the registered owner of the vessel ROYAL HAWAIIAN, O.N. 512328, a 51 foot commercial sailing vessel with its primary mooring in Kewalo.

10. Plaintiff HAWAII OCEAN ADVENTURES R US, LLC. is a domestic limited liability company that, at all times relevant hereto, was incorporated and had its principal place of business in the State of Hawaii. Hawaii Ocean Adventures R US, LLC. is the registered owner of the vessel PRINCE KUHIO, O.N. 665016, a 77.2 foot commercial motor vessel with its primary mooring in Kewalo.

11. Plaintiff PARADISE WATERSPORTS, LLC. is a domestic limited liability company that, at all times relevant hereto, was incorporated and had its principal place of business in the State of Hawaii. Paradise Watersports, LLC. is the registered owner of the vessels BIG O, O.N. 1230626 and HI FLYER, O.N. 1168633, which are both commercial parasailing vessels with their primary mooring in Kewalo.

12. Plaintiff ROBERT GONZALES is an individual that, at all times relevant hereto, was a citizen and resident of the State of Hawaii. Robert Gonzales is the registered owner of the vessel WINDS OF CHANGE, O.N.

1256045, a 41 foot recreational sailing vessel with its primary mooring in Kewalo.

13. Plaintiff MILAN POPODIC is an individual that, at all times relevant hereto, was a citizen and resident of the State of Hawaii. Milan Popodic is the registered owner of the motor vessel KUU HUAPALA, Hawaii registration number HA19030, with its primary mooring in Kewalo.

14. Plaintiff STEVEN HALL is an individual that, at all times relevant hereto, was a citizen and resident of the State of Hawaii. Steven Hall is the registered owner of the motor vessel TANGAROA, O.N. 1191936, with its primary mooring in Kewalo.

15. Upon information and belief, Defendant, THE HOWARD HUGHES CORPORATION is, and was at all times relevant hereto, a corporation that was incorporated in the State of Delaware, has its principal place of business in the State of Texas, but is authorized to and conducts business on a regular basis in the State of Hawaii.

16. Upon information and belief, Defendant, WARD MANAGEMENT DEVELOPMENT COMPANY, LLC. is, and was at all times relevant hereto, a corporation that was incorporated in the State of Delaware, has its principal place of business in the State of Texas, but is authorized to and conducts business on a regular basis in the State of Hawaii.

17. Upon information and belief, Defendant, VICTORIA WARD, LIMITED is, and was at all times relevant hereto, a corporation that was incorporated in the State of Delaware, has its principal place of business in the State of Texas, but is authorized to and conducts business on a regular basis in the State of Hawaii.

18. DOE DEFENDANTS 1 through 20, DOE CORPORATIONS 1 through 20, DOE PARTNERSHIPS 1-20, and DOE GOVERNMENT AGENCIES 1-20, are sued herein under fictitious names for the reason that their true names and identities are presently unknown to Plaintiffs, except that they are persons and/or entities who are in some manner presently unknown to Plaintiffs engaged in the activities alleged herein; and/or are in some manner responsible for the injuries and damages to Plaintiffs; and/or are persons and/or entities who conducted some activity in a negligent and/or willful manner; which conduct was the proximate cause of the injuries or damages to Plaintiffs and/or were in some manner related to the previously named Defendants engaged in the activities alleged herein; and Plaintiffs pray leave to insert their true names and capacities, activities and/or responsibilities, whether individual or corporate, when the same are ascertained. Plaintiffs have been unable to ascertain the identities of these

DOE DEFENDANTS through a thorough examination of all documents available to Plaintiffs at this time.

## GENERAL ALLEGATIONS

19. In the winter of 2018, Defendants began construction of the A'Ali'i condominium tower in Ward Village of Honolulu at 987 Queen Street, Honolulu, HI 96814.

20. A'Ali'i is a 42 -story, mixed-use, high-rise condominium of 751 units. The structure consists of an eight-level podium with a 35-story residential tower sitting atop the podium.

21. Plaintiffs are the owners of vessels moored in Kewalo Basin Harbor and own vehicles which are frequently parked there. Kewalo is directly downwind in normal tradewind conditions from Defendants' construction activities in Ward Village.

22. An unusual amount of dust began to appear on the decks of Plaintiffs' vessels for the first time at the onset of construction of the A'Ali'i building. On or about May, 2020, such dust began accumulating in alarming amounts.

23. Such new dust accumulating on vessels in Kewalo was different from any normal dust in its unusual amount, consistency, and color.

24. In spring, 2020, Plaintiffs began noticing rust stains forming on the decks of their vessels, on appurtenances (*i.e.* – tables, grills, radar domes, navigation equipment, etc.), canvas (*i.e.* – sails, dodgers, biminis, awnings, cushion covers, etc.), personal property (*i.e.*- coolers, surfboards, paddleboards, chairs, etc.), and on their automobiles.

25. The dust settling on Plaintiffs' vessels and the distinctive damage it causes is unique to Kewalo and does not occur in any of Oahu's other small boat harbors.

26. Also in spring, 2020, Plaintiffs began to notice visible fugitive dust arising from the construction of the A'Ali'i building and discharging beyond the property lot line on which the fugitive dust originated.

27. With the A'Ali'i construction directly upwind from Kewalo in normal tradewind conditions, the dust was blowing from the construction site and onto the Plaintiffs' vessels and automobiles located in Kewalo.

28. In the spring/summer, 2020, many Plaintiffs filed complaints about the fugitive dust with the Kewalo harbormaster and with the Defendants directly.

29. Defendants responded to Plaintiffs' complaints with questionnaires sent from their insurance carriers.

30. In response to Plaintiffs' complaints, Defendants sent agents to inspect Plaintiffs' vessels and automobiles to confirm the cause and extent of the damage.

31. Despite Plaintiffs' complaints and confirmation of damage by their agents, Defendants did not take any appropriate action to prevent, contain, or minimize the discharge of fugitive dust from the A'Ali'i construction site.

32. Defendants also knew, or should have known, at the outset that their construction activities would cause fugitive dust issues and rust damage to vessels and automobiles in Kewalo because they had received many similar complaints and paid damage compensation to some vessel owners in Kewalo during their construction of the nearby Waiea condominium building in 2016.

33. Measures to eliminate or effectively contain fugitive dust and particulates currently exist and are generally known in the construction industry, nevertheless the Defendants failed to employ such measures in an apparent effort to avoid any additional time and expense such measures may require.

34. On or about March, 2020, Defendants began construction on the Ko'Ula building in the Kakaako neighborhood of Honolulu at 1000 Auahi Street, Honolulu, HI 96814.

35. During the construction of the Ko'Ula tower throughout 2020, 2021, and continuing into 2022, visible fugitive dust containing metal particulates continued to blow from the construction site and onto the Plaintiffs' vessels and automobiles in Kewalo causing significant and unsightly damage.

36. Many of the Plaintiffs' vessels are commercial vessels and, despite regular cleaning, the rust stains continued to increase on the decks, seating, tables, and canvas which reflected and continues to reflect poorly on each business as a whole given the high expectations of clients and customers of the Hawaii tourism industry.

37. The Plaintiffs in commercial business were forced to take their vessels out of commercial service for longer periods of time, paying crew to perform extra cleaning services in efforts to fight the constant buildup of construction dust on their vessels.

38. Plaintiffs perceived a need to repaint their vessels in order to present clean and seaworthy vessels to customers. Some owners did so, though their efforts were futile. The continued unmitigated construction, spanning several years towards Defendants' completion of the numerous towers of Ward Village, quickly stained the new paint with rust once again.

39. Defendant Howard Hughes Corporation is not only the parent company in the construction activities in Ward Village, but also holds the contract to oversee and manage the Kewalo Basin Harbor, creating an additional legal duty and responsibility on Howard Hughes and its subsidiaries to prevent damage or interference with Plaintiffs' property within the harbor.

40. Due to the Howard Hughes Corporation's dual authority as the parent company in the construction in Ward Village *and* managing Kewalo Harbor, many leaseholders of slips in Kewalo Harbor were apprehensive about speaking up and taking action against the Howard Hughes Corporation for fear that they might lose their slip leases in retaliation – a move that would completely shut down Plaintiffs' businesses.

41. In the winter of 2021, Defendants began construction on the Victoria Place condominium building in Ward Village of Honolulu at 1100 Ala Moana Blvd. Honolulu, HI 96814.

42. The Victoria Place construction site is directly across the street from Kewalo and directly upwind in normal tradewind conditions.

43. With the onset of Victoria Place construction, Plaintiffs immediately noticed an increase in visible fugitive dust; however, this time, along with metal particulates, the dust also contained more concrete particles that

sometimes solidified onto Plaintiffs' vessels and caused deep etching in the affected surfaces.

44. Fugitive dust containing metal particulates and concrete particles continues to originate on Defendants' construction sites and discharge beyond the construction lot line onto Plaintiffs' property in Kewalo.

45. Plaintiffs are concerned not only about the physical damage to their property and businesses, but also the negative impacts to their health from breathing the fugitive dust containing metal particulates and other harmful substances that now permeates the air in the Kaka'ako neighborhood, Kewalo, and nearby beach parks due to Defendants' construction activities.

46. Plaintiffs' commercial businesses and recreational activities depend on Hawaii's vibrant but fragile ocean and coral reef ecosystems remaining intact and free from undue stress created by Defendants' construction activities.

47. The fugitive dust containing metal particulates and other harmful substances that is falling on the vessels is also falling into the waters of Kewalo and likely contaminating the waters off of nearby beach parks causing damage to Hawaii's fragile coral reefs and the ecosystems and species that depend on them. Many protected and endangered species are

likely affected including whales, monk seals, and turtles as well as treasured species of coral, fish, dolphins, and more.

48. The Plaintiffs have each suffered anguish, to one degree or another, from worry and concern, not only for their individual personal health and livelihoods, but also for their overall concern regarding the damage being done to Hawaii's environment by Defendants' discharge of fugitive dust and particulates.

## COUNT ONE – PRIVATE NUISANCE

49. Plaintiffs reallege and incorporate by this reference the allegations hereinabove alleged.

50. Plaintiffs have a real property interest in their respective leased vessel moorings and parking stalls at Kewalo Basin Harbor.

51. As outlined above, Plaintiffs' use and enjoyment of their property is interfered with substantially and unreasonably through Defendants' creation of fugitive dust and failure to control such fugitive dust from discharging onto Plaintiffs' property.

52. Upon information and belief, and to be further proven at trial, Defendants have created fugitive dust and failed to control such fugitive dust through actions that are intentional and/or unreasonable.

14

53. Upon information and belief, and to be further proven at trial, Defendants have created fugitive dust and failed to control such fugitive dust through actions that are unintentional but are otherwise actionable under the rules controlling liability for negligent or reckless conduct (*See* Count Five - Negligence).

54. Defendants' conduct creates an unreasonable interference and significant damage to Plaintiffs' property.

55. Defendants' creation and discharge of fugitive dust and failure to contain such fugitive dust is the legal cause of rust and other significant damage to Plaintiffs' property.

56. Plaintiffs request an injunction and damages for private nuisance in an amount to be proven at trial in excess of $75,000.

## COUNT TWO – PUBLIC NUISANCE

57. Plaintiffs reallege and incorporate by this reference the allegations hereinabove alleged.

58. Defendants' creation and discharge of fugitive dust and failure to control fugitive dust unlawfully: (1) annoys and does damage to Plaintiffs and the public; (2) works hurt, inconvenience, and damage to Plaintiffs and the public; (3) annoys and disturbs Plaintiffs in the free use, possession, and enjoyment of their property; (4) renders the ordinary use and physical

occupation of their property uncomfortable, and (5) injures and annoys Plaintiffs in the enjoyment of their legal rights

59. Defendants' conduct is in the Kaka`ako neighborhood of Honolulu, which is a public place, or where the public frequently congregate, or where members of the public are likely to come within the range of its influence.

60. Defendants' conduct is the legal cause of physical harm to Plaintiffs' land and chattels and, as stated above, the harm is different in kind from that suffered by other members of the public.

61. Plaintiffs request an injunction and damages for public nuisance in an amount to be proven at trial in excess of $75,000.

## COUNT THREE – MIXED NUISANCE

62. Plaintiffs reallege and incorporate by this reference the allegations hereinabove alleged.

63. As alleged in Counts One and Two, Defendants have engaged in conduct that is both a public and private nuisance.

64. Defendants' conduct amounts to a mixed nuisance that is public conduct which at the same time causes special damages to private individuals.

65. Plaintiffs request an injunction and damages for mixed nuisance in an amount to be proven at trial in excess of $75,000.

## COUNT FOUR – CONTINUING NUISANCE

66. Plaintiffs reallege and incorporate by this reference the allegations hereinabove alleged.

67. Defendants have intentionally engaged in construction activities that create and discharge fugitive dust and have failed to contain such fugitive dust.

68. Fugitive dust from Defendants' conduct is the legal cause of damage to Plaintiffs' property and has caused other annoyances and disturbances as outlined above.

69. Defendants' conduct is the cause of an ongoing or repeated disturbance that may vary over time.

70. Defendants' conduct can be discontinued or abated through use of proper and effective practices to prevent the discharge of fugitive dust.

71. Plaintiffs request an injunction and damages for continuing nuisance in an amount to be proven at trial in excess of $75,000.

## COUNT FIVE – NEGLIGENCE

72. Plaintiffs reallege and incorporate by this reference the allegations hereinabove alleged.

73. Defendants owe a duty to Plaintiffs to conduct construction activities on their land with proper and effective procedures to prevent fugitive dust from discharging from their construction site and onto Plaintiffs' property.

74. Defendants breached their duty by allowing fugitive dust from their construction activities to discharge onto Plaintiffs' property.

75. Defendants knew or should have known that the creation of fugitive dust without effective measures to prevent or contain such fugitive dust would result in the dust entering Plaintiffs' property directly downwind in prevailing tradewinds.

76. Defendants' breach was a direct and proximate cause of damage to Plaintiffs and their property.

77. Plaintiffs were damaged by direct harm to their property; excessive cleaning time, labor, and materials; and loss of revenue for time their vessels and vehicles were out of service for cleaning and/or repair due to the fugitive dust.

78. Plaintiffs request damages for negligence in an amount to be proven at trial in excess of $75,000.

## COUNT SIX – NEGLIGENCE PER SE

79. Plaintiffs reallege and incorporate by this reference the allegations hereinabove alleged.

80. Defendants violated and continue to violate Hawaii Administrative Rules ("HAR") section 11-60.1-33(a) by causing or permitting visible fugitive

dust to become airborne without taking reasonable precautions. *See* Count Eleven *infra.*

81. Defendants violated and continue to violate HAR § 11-60.1-33(b) by causing or permitting the discharge of visible fugitive dust beyond the property lot line on which the fugitive dust originates. *See* Count Eleven *infra.*

82. The intent of HAR §11-60.1-33 was the prevention of injuries to nearby people and/or property from dust that is not effectively controlled.

83. The Plaintiffs are counted in the class of people HAR §11-60.1-33 was intended to protect because they lease property, recreate, and work in the vicinity of Defendants' construction activities.

84. Plaintiffs were damaged by direct harm to their property, excessive cleaning time and costs, and/or loss of revenue for time their vessels and vehicles were out of service for cleaning and/or repair due to the fugitive dust.

85. Plaintiffs request damages for negligence *per se* in an amount to be proven at trial in excess of $75,000.

## COUNT SEVEN - TRESPASS

86. Plaintiffs reallege and incorporate by this reference the allegations hereinabove alleged.

87. Plaintiffs have a real property interest in their respective leased vessel moorings and parking stalls at Kewalo Basin Harbor.

88. Defendants had a legal duty to respect Plaintiffs' right of exclusive possession of their property.

89. Defendants knowingly and/or negligently violated Plaintiffs' right of exclusive possession of their property and entered Plaintiffs' property by creating and discharging fugitive dust onto Plaintiffs' property.

90. Defendants knew or should have known that the creation of fugitive dust without effective measures to prevent or contain such fugitive dust would result in the dust entering Plaintiffs' property directly downwind in prevailing tradewinds.

91. Defendants' trespass is the legal cause of direct injury and loss to the Plaintiffs in the rust damage to the vessels, etching of painted surfaces, and consequential damages of payment of crew for extra cleaning, deprivation of their use of the vessel including, but not limited to, damages for lost revenue during times when the vessels were out of service for excessive cleaning, sanding, or painting.

92. Plaintiffs request an injunction and damages for trespass to property in an amount to be proven at trial in excess of $75,000.

**COUNT EIGHT – TRESPASS/ INTERFERENCE TO CHATTELS**

93. Plaintiffs reallege and incorporate by this reference the allegations hereinabove alleged.

94. The Plaintiffs own and have the right to possess their vessels and vehicles which are personal property.

95. As alleged above, the Defendants intentionally interfered with the Plaintiffs' property without any consent by creating and discharging fugitive dust onto Plaintiffs' property.

96. Defendants deprived the Plaintiffs of the use of their property as a means of transportation of people or objects over water for times the vessels have been subject to excessive cleaning over and above normal cleaning and maintenance routines for similarly situated vessels.

97. Defendants deprived the Plaintiffs of the use of their property as a means of transportation of people or objects over water for times the vessels must be hauled out in the shipyard or otherwise taken out of service for repair of etching and repainting to fix the damage caused by Defendants' conduct.

98. The interference is the legal cause of direct damages to the Plaintiffs in the rust damage to the vessels, etching of painted surfaces, and consequential damages for payment of crew for extra cleaning, deprivation of their use of the vessel including, but not limited to, damages for lost revenue during

times when the vessels were out of service for excessive cleaning, sanding, or painting.

99. Plaintiffs request an injunction and damages for trespass/interference to chattels in an amount to be proven at trial in excess of $75,000.

## COUNT NINE – PERMANENT INJUNCTION

100.    Plaintiffs reallege and incorporate by this reference the allegations hereinabove alleged.

101.    Defendants have started construction of the Victoria Place condominium building directly across the street from Kewalo with construction to proceed for at least a year.

102.    Defendants' masterplan calls for the construction of at least three more condominium buildings in Ward Village, which proposes construction to continue for many years to come.

103.    Defendants have shown with the construction of the Waiea, A'Ali'i, and Ko'Ula buildings that (a) their construction practices discharge fugitive dust laden with metallic particles and other harmful elements which damage Plaintiffs' property, (b) Defendants have been alerted to the harmful fugitive dust but have not taken proper or effective measures to prevent the discharge of such fugitive dust, (c) Defendants will continue to discharge harmful fugitive dust into Kewalo if not permanently enjoined

from continuing construction without taking proper and effective measures to prevent such fugitive dust.

104.    Plaintiffs and the general public in the Kakaako neighborhood, Kewalo Basin Harbor and beach park, and Ala Moana Beach Park, will suffer irreparable physical harm and health implications from breathing the air containing such harmful fugitive dust.

105.    Plaintiffs and the general public will suffer irreparable harm because the fugitive dust containing metal particulates and other harmful substances will cause irreparable harm to the ocean environment, including Hawaii's fragile coral reef ecosystems, which the people of Hawaii depend on for commercial activities, recreation, fishing, and traditional and customary practices.

106.    The balance of irreparable damage favors the issuance of a permanent injunction because Defendants can easily take proper and effective measures which are widely known and available in the construction industry to prevent the discharge of fugitive dust.

107.    The public interest favors the issuance of a permanent injunction because the discharge of fugitive dust containing metal particulates and other harmful substances threatens the general public's health, property, environment, and access to traditional and customary practices.

108.    Plaintiffs request this Court issue a permanent injunction against any further or continuing construction activities by Defendants in the Kakaako neighborhood, under the Ward Village Master Plan, or under the Ward Neighborhood Master Plan until Defendants develop and implement practices and procedures approved by this Court, or this Court's appointed agent, to prevent the discharge of fugitive dust.

### COUNT TEN – PUNITIVE DAMAGES

109.     Plaintiffs reallege and incorporate by this reference the allegations hereinabove alleged.

110.    Defendants' construction activities created and continue to create fugitive dust that has caused damage to vessels and other property in Kewalo.

111.    Defendants' construction activities amounted to a private nuisance, public nuisance, mixed nuisance, continuing nuisance, trespass, negligence, negligence per se, and trespass/interference to chattels as outlined *supra* in Counts 1-8.

112.    Defendants became aware that their construction activities and discharge of fugitive dust would cause damage to vessels and other property in Kewalo because they received numerous complaints during their construction of the Waiea condominium building.

113.   Defendants became aware that their construction activities and discharge of fugitive dust would cause and were causing damage to vessels and other property in Kewalo because they received numerous complaints from owners of property in Kewalo in the spring and summer of 2020.

114.   Despite numerous complaints from Plaintiffs, and the broader Kewalo community, followed by inspections by Defendants' agents affirming the validity of the complaints and extent of the damage, Defendants continued construction activities with willful or wanton conduct, and/or a reckless disregard for the rights of others.

115.   Due to Defendants' continued willful or wanton conduct and/or a reckless disregard for the rights of others, Plaintiffs request punitive damages to the maximum extent recoverable under the law.

## COUNT ELEVEN – CITIZENS' SUIT FOR VIOLATION OF THE CLEAN AIR ACT AND HAWAII ADMINISTRATIVE RULES SECTION 11-60.1-33

116.   Plaintiffs reallege and incorporate by this reference the allegations hereinabove alleged.

117.   HAR section 11-60.1-33 is incorporated into the citizens' suit provisions of the Clean Air Act (42 U.S.C 7604) as a part of the Hawaii Clean Air Act State Implementation Plan.

118.    Defendants violated and continue to violate HAR § 11-60.1-33(a) by causing or permitting visible fugitive dust to become airborne without taking reasonable precautions.

119.    Defendants violated and continue to violate HAR § 11-60.1-33(b) by causing or permitting the discharge of visible fugitive dust beyond the property lot line on which the fugitive dust originates.

120.    Plaintiffs filed their Clean Air Act citizens' suit 60-Day notice on November 12, 2021, in compliance with 42 U.S.C 7604 and 40 C.F.R. Part 54.

121.    Plaintiffs request damages for Defendants' violation of HAR § 11-60.1-33 and the Clean Air Act, injunctive relief to prevent continuing and future violations, and any other remedies available under the law.

WHEREFORE, Plaintiffs respectfully demand judgment and pray as follows:

A. That process in due form of law according to the course and practice of this Honorable Court may issue against THE HOWARD HUGHES CORPORATION citing it to appear and answer on oath all and singular matters aforesaid;

B. That process in due form of law according to the course and

practice of this Honorable Court may issue against THE WARD MANAGEMENT DEVELOPMENT COMPANY, LLC. citing it to appear and answer on oath all and singular matters aforesaid;

C.  That process in due form of law according to the course and practice of this Honorable Court may issue against VICTORIA WARD LIMITED citing it to appear and answer on oath all and singular matters aforesaid;

D.  That Plaintiffs be awarded damages in an amount in excess of $75,000 and to be further proven at trial for private nuisance;

E.  That Plaintiffs be awarded damages in an amount in excess of $75,000 and to be further proven at trial for public nuisance;

F.   That Plaintiffs be awarded damages in an amount in excess of $75,000 and to be further proven at trial for mixed nuisance;

G.  That Plaintiffs be awarded damages in an amount in excess of $75,000 and to be further proven at trial, and an injunction against further discharge of fugitive dust for continuing nuisance;

H.  That Plaintiffs be awarded damages in an amount in excess of $75,000 and to be further proven at trial for negligence;

I.   That Plaintiffs be awarded damages in an amount in excess of $75,000 and to be further proven at trial for negligence *per se*;

J.  That Plaintiffs be awarded damages in an amount in excess of $75,000 and to be further proven at trial for trespass;

K.  That Plaintiffs be awarded damages in an amount in excess of $75,000 and to be further proven at trial for trespass/interference with chattels;

L.  That Defendants be permanently enjoined from continuing and future construction activities that discharge fugitive dust without implementing proper and effective measures to prevent such discharge;

M. That Plaintiffs be awarded damages in an amount in excess of $75,000 and to be further proven at trial and an injunction in this citizens' suit for Defendants' continuing violation of HAR § 11-60.1-33 and the Clean Air Act;

N.  That Plaintiffs be awarded punitive damages;

O.  That Plaintiffs be awarded attorneys' fees;

P.  That Plaintiffs have such other and further relief deemed just and proper by this Honorable Court.

DATED: Honolulu, Hawaii, March 4, 2022.


 /s/ Andrew Porter
ANDREW N. PORTER
Attorney for Plaintiffs



**The Plaintiffs demand trial by jury on all issues.**


 /s/ Andrew Porter
ANDREW N. PORTER
Attorney for Plaintiffs